IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ERICA M. THOMPSON, *individually and on behalf of those similarly situated*, | |
| Plaintiff, | Civil Action No. 2:20-cv-532 |
| vs. | **JURY TRIAL DEMANDED** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Erica M. Thompson ("Plaintiff"), by and through her attorneys, brings the following Complaint on behalf of herself and the classes set forth below and states as follows:

**INTRODUCTION**

1. This is a class action for damages, costs and attorneys' fees for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA") and for breach of contract.

2. This case concerns inaccurate credit reporting by Wells Fargo Home Mortgage, a mortgage servicer that is a division of Wells Fargo Bank, N.A. ("Wells Fargo").

3. As a mortgage servicer, Wells Fargo reports information to consumer reporting agencies like TransUnion, Experian, and Equifax. TransUnion, Experian, and Equifax compile and maintain files on consumers on a nationwide basis and sell consumer reports generated to potential creditors.

1

4. In response to the ongoing COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, ___ Stat. ___ (2020) ("CARES Act").

5. As part of this relief, consumers are allowed to request a 180-day forbearance on their mortgages as a result of financial hardship due to the COVID-19 emergency. Some mortgage servicers are administering these forbearances in various increments.

6. Plaintiff has a mortgage with Wells Fargo and requested and received relief until July 1, 2020. At the end of her forbearance plan, she paid the total amount due and her mortgage account was current.

7. In connection with the forbearance, Wells Fargo made various assurances that it would continue resuming its regular servicing including credit reporting at the end of the forbearance. Relying on Wells Fargo's assurances, Plaintiff paid the total amount due on her mortgage loan at the end of her forbearance.

8. After receiving her payment, Wells Fargo erroneously reported to the credit bureaus that Plaintiff's mortgage was over 120 days past due with a past due balance of more than $17,000. Wells Fargo's inaccurate reporting could have been easily remedied had it implemented straightforward measures to update the reporting of loans when the forbearance period ended. What is worse, Wells Fargo failed to correct its erroneous reporting after Plaintiff disputed the inaccurate information.

9. Plaintiff seeks statutory and punitive damages against Wells Fargo pursuant to the FCRA.

## THE PARTIES

10. Plaintiff Erica M. Thompson is a natural person who resides in Virginia Beach, Virginia and is a "consumer" protected by the FCRA.

11. Wells Fargo Bank, N.A. is a foreign corporation authorized to do business in the Commonwealth of Virginia through its registered office in Richmond, VA. Wells Fargo Bank, N.A. services Plaintiff's mortgage through its Wells Fargo Home Mortgage division. Plaintiff's mortgage is one of the 8 million loans currently serviced by Wells Fargo Bank, N.A.

12. Wells Fargo is a "furnisher" governed by the FCRA.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction. The Court has supplemental jurisdiction over Plaintiff's breach of contract claims under 28 U.S.C. § 1367.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS

**The CARES Act, Credit Reporting, and Wells Fargo's Forbearance Plan**

15. As part of the CARES Act, Congress responded to the COVID-19 emergency by providing mortgage payment relief for federally-backed mortgages.

16. Section 4022(b) of the CARES Act provides that "a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan." The

borrower may do so by "(A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency."

17. Upon receipt of a forbearance request, "such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower." *Id.*

18. The CARES Act also amended the Fair Credit Reporting Act to ensure that consumers were not punished for electing forbearance. Specifically, the FCRA as amended now provides:

> If a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall—
> **(I)** report the credit obligation or account as current; or
> **(II)** if the credit obligation or account was delinquent before the accommodation—
> **(aa)** maintain the delinquent status during the period in which the accommodation is in effect; and
> **(bb)** the consumer brings the credit obligation or account current during the period described in item (aa), report the credit obligation or account as current.

15 U.S.C. § 1681s-2(a)(1)(F).

19. Wells Fargo has chosen to administer the required forbearance under the CARES Act in "3-month increments."[1]

20. In its forbearance plan, Wells Fargo provides that this is a "temporary pause on your loan payments" and "regular monthly payments schedule" will resume at the end of the 3 month period.

21. Wells Fargo further states that, after the forbearance ends, credit reporting will resume.

---

[1] Wells Fargo, https://update.wf.com/coronavirus/home-lending/?_ga=2.208479514.948798962.1603722231-665880800.1603722231, (last visited October 26, 2020).

**Wells Fargo Inaccurately Reported Plaintiff's Mortgage**

22. Plaintiff's mortgage loan is serviced by Wells Fargo for her home in Virginia Beach, VA.

23. Because of a multi-year battle with cancer, Plaintiff was past due on her mortgage in March 2020.

24. Plaintiff, an air force reservist and government employee was trying to get back on her feet with the COVID-19 crisis happened.

25. In a letter dated April 14, 2020, Wells Fargo offered Plaintiff a "short term payment suspension (forbearance)." The letter explained, "This payment relief is an immediate payment suspension - a temporary pause of your loan payments for an initial three months. Unless you receive further relief, you'll need to resume your regular mortgage payment schedule beginning on July 1, 2020."

26. The letter also explained that, after the 3 month forbearance period, "you may have the option to extend the payment suspension up to an additional three months, for a total of six months."

27. The letter also explained that accepting the short term payment suspension would freeze negative credit reporting of any "additional missed payments." And, at the end of the payment suspension period, reporting to consumer reporting agencies would begin or resume.

28. Plaintiff accepted the short term payment suspension plan.

29. At the end of the plan, in July 2020, Plaintiff brought her mortgage current by paying all missed payments and any past due amounts and was able to resume making her regularly scheduled payments.

30. Because she was now current on her mortgage, and planned to begin making her monthly mortgage payment in August 2020, she opted out of the mortgage payment suspension plan with Wells Fargo and expected that her credit report would be updated to reflect her account as current.

31. Wells Fargo sent Plaintiff a mortgage statement dated July 16, 2020, demonstrating that her mortgage account was no longer past due and that she owed her regularly monthly mortgage payment of $1,010.61 for August 2020:

| Explanation of amount due | | Account summary | | Past payments breakdown | | |
|---|---|---|---|---|---|---|
| | | | | | Since last statement | Year-to-date |
| Principal | $316.10 | Unpaid principal balance | $159,125.97 | Total received* | $11,981.64 | $24,954.01 |
| Interest | $430.97 | (This is not a payoff amount.) | | Principal | $3,727.32 | $7,631.04 |
| Escrow | $263.54 | Escrow balance | $1,578.56 | Interest** | $5,237.52 | $11,045.71 |
| Current payment | $1,010.61 | Interest rate | 3.250% | Escrow | $3,033.05 | $6,277.26 |
| Total amount due 08/01/20 | $1,010.61 | Maturity date (month/year) | 01/47 | Taxes disbursed (YTD) | | $851.14 |

32. While Wells Fargo sent her mortgage statements reflecting her account as current and that she was no longer in forbearance, it erroneously continued to report her credit history as if it was frozen in the pre-forbearance period.

33. Accordingly, her credit reports erroneously stated that her account was 120 days or more past due with a past due balance of over $17,000.

34. This was false because Plaintiff had brought her account current in July.

35. Plaintiff disputed the inaccurate reporting to Wells Fargo and the credit bureaus on or about July 24, 2020.

36. Plaintiff made her August 2020 mortgage payment as instructed by her monthly statement to Wells Fargo.

37. Despite being current, the credit bureaus all verified the derogatory, misleading and incomplete reporting.

38. In August, Plaintiff disputed to each credit bureau again, disputing Wells Fargo's continued reporting as past due.

39. The credit bureaus forwarded her disputes to Wells Fargo.

40. Again, the credit bureaus told Plaintiff that Wells Fargo has verified the negative reporting.

41. Plaintiff also made her September 2020 mortgage payment.

42. For a third time, in September, Plaintiff disputed to each credit bureau, who forwarded her dispute to Wells Fargo.

43. Despite this, Wells Fargo continued to report Plaintiff as if she was still past due and had not made any payment and the credit bureaus refused to correct their reporting's.

44. In fact, in a comment to Equifax, as of September 9, 2020, Wells Fargo was reporting to the credit bureaus that Plaintiff was "180 Days or More Past Due."

```
Wells FARGO Home Mortgage    PO Box 10335 Des Moines IA 50306-0335 : (800) 288-3212
Account Number          Date Opened   High Credit   Credit Limit   Terms Duration   Terms Frequency   Months Revd   Activity Designator   Creditor Classification
936032597*              08/29/2011    $166,400      $0             30Y              Monthly           96
Items As of   Balance   Amount        Date of       Actual         Scheduled        Date of 1st       Date of       Date Maj.   Charge Off    Deferred Pay   Balloon Pay   Balloon     Date
Date Reported Amount    Past Due      Last Payment  Payment Amount Payment Amount   Delinquency       Last Activity Del. 1st Rptd Amount      Start Date     Amount        Pay Date    Closed
09/09/2020    $177,529  $17,902       02/2020       $0             $999             08/2017                         $0                         $0
Status                  Type of Account              Type of Loan                    Whose Account                   Portfolio Indicator       Portfolio Status
Over 120 Days Past Due Mortgage                      Va Real Estate Mortgage         Individual Account
ADDITIONAL INFORMATION:
Real Estate Mortgage

Loan Modified

Fixed Rate

180 Days or More Past Due
```

45. Additionally, Plaintiff's Equifax report stated that it had "No Data Available" for her July and August 2020 payments even though she had made those payments in full and on time. Given the history of her loan, this missing information created the appearance that she was still in forbearance and behind on her mortgage.

7

46. It is facially inconsistent to report a loan as past due but also generate a mortgage statement indicating the same loan has no past due balance. When Plaintiff disputed the information in her credit report, this error should have been immediately clear to Wells Fargo.

47. And, any reasonable entity would have realized that such reporting was internally inconsistent.

48. When she contacted the credit bureaus to learn why they refused to correct this derogatory reporting, on each occasion, she was told that they could not update the reporting because Wells Fargo did not confirm what she stated as true.

49. When Wells Fargo finally responded it her disputes in writing, it was clear it understood her disputes. In its correspondence dated September 15, 2020, it stated:

> We recognize you stated the reporting was inaccurate, and we're able to confirm no error occurred. We regret this isn't the outcome you expected.

50. Additionally, it stated that the suppression of the accurate information (that she was not past due) was caused by the forbearance plan:

> We recognize you may have been informed the prior loan modification caused the current suppression, however, the current suppression was due to the short-term payment relief placed on your account. We apologize for any confusion you have experienced.

51. Thus, it appears that Wells Fargo was still treating Plaintiff's account as if she was in forbearance for credit reporting purposes.

52. Wells Fargo did this to Plaintiff's detriment even though the forbearance period had ended two months prior, and Wells Fargo was sending her monthly statements as if the forbearance period had ended.

53. Plaintiff's credit files were accessed numerous times during the period when her mortgage was reporting inaccurately. Plaintiff was denied credit on multiple occasion due to the inaccurate reporting of the mortgage account. And, Plaintiff was distressed by Wells Fargo's

8

conduct because, among other things, she could lose her top secret security clearance required for her job based on the inaccurate information in her credit report.

54. One creditor cited the reason for its denial as "there are too many delinquent past or present mortgage credit obligation(s)." Her mortgage account was the only open negative account reporting within her credit files.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings Count I as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Inaccurate Account Status Class, defined as:

> All individuals with a Wells Fargo mortgage account who accepted a short term payment suspension, or similar deferred payment arrangement, and who resumed payments at the end of the deferred payment arrangement, and where Wells Fargo failed to update the account status to reflect that payments had resumed when the consumer sent a dispute to a credit reporting agency about how Wells Fargo was reporting the account.

56. Plaintiff brings Count II as a class action pursuant to Rule 23 on behalf of the Wells Fargo Forbearance Class, defined as

> All individuals with a Wells Fargo mortgage account who accepted a short term payment suspension, and resumed payments after the forbearance, and whose credit report continued to reflect an inaccurate and negative status following the completion or cancellation of the suspension period.

57. Class certification is appropriate under Rule 23(a).

58. <u>Numerosity</u>:  The classes are so numerous that joinder of all class members is impracticable. Given the volume of Wells Fargo's business, there are hundreds or thousands of class members.

59. <u>Typicality</u>: Plaintiff's claims are typical of the members of the classes. It is typical for Wells Fargo to continue to treat an account as in forbearance for credit reporting purposes even though the suspension period was complete or cancelled, and Wells Fargo treated Plaintiff

consistently with other class members in accordance with their standard policies and practices.

60. <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the classes because she and her experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the classes.

61. <u>Commonality:</u> This case presents common questions of law and fact, including but not limited to:

    a. Whether Wells Fargo violated the FCRA by failing to follow reasonable procedures to investigate Plaintiff's dispute;

    b. Whether Wells Fargo's violations of the FCRA were willful;

    c. Whether Wells Fargo breached its contract with its borrowers by inaccurately reporting loans as late after the period of forbearance; and

    d. The proper measure of damages.

62. Class certification is appropriate under Rule 23(b)(3) because, *inter alia*, questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Wells Fargo's conduct described in this Complaint stems from common and uniform policies and practices. Members of the classes do not have an interest in pursuing separate actions against Wells Fargo, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Wells Fargo's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims

in a single forum.

63. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

64. Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681s-2(b)(1)(A) and (B)
### (On Behalf of Plaintiff and the Inaccurate Account Status Class)

65. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

66. On one or more occasion within the past two years, by example only and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) and (B) by failing to fully and properly investigate Plaintiff's and the Inaccurate Account Status Class Members' disputes.

67. Upon information and belief, Plaintiff alleges that the credit bureaus forwarded Plaintiff's disputes to Wells Fargo.

68. Wells Fargo understood the nature of Plaintiff's disputes.

69. Upon information and belief, Wells Fargo followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the mortgage account and repeats back the same information that was previously reported to the credit reporting agency.

70. Upon information and belief, when Wells Fargo receives a consumer dispute, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

71. Indeed, if Wells Fargo had done the most cursory review of its own records, it would have discovered its own billing statements and servicing notes indicating the status of Plaintiff's mortgage as current as of July 2020.

72. Further, if Wells Fargo had reviewed the information provided by Plaintiff in making her dispute, it would have made Wells Fargo error apparent.

73. Because of Wells Fargo's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff and the Inaccurate Account Status Class suffered actual damages, including but not limited to: loss of credit, credit denials, damage to reputation, embarrassment, humiliation, and other emotional distress.

74. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff and the Inaccurate Account Status Class are entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT II
### Breach of Contract
### (On Behalf of Plaintiff and the Forbearance Class)

75. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

76. Plaintiff and Wells Fargo entered into an enforceable contract when Plaintiff accepted Wells Fargo's offer of the short term suspension plan.

77. As part of that agreement, Wells Fargo made representations that at the end of the forbearance normal credit reporting would resume.

78. Plaintiff complied with all terms of the contract.

79. Wells Fargo violated its contractual terms by failing to update the account status after the period of forbearance and by continuing to consider her account as in forbearance for purposes of credit reporting. This is evidenced by the fact that her credit report status appeared to be frozen and only the pre-forbearance status was reporting.

80. Plaintiff and the Forbearance Class are entitled to damages from Wells Fargo's breach of contract.

**COUNT III**
**15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(Individual Claim)**

81. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

82. On one or more occasion within the past two years, by example and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including a notation that her account was disputed and by failing to correctly report the results of an accurate investigation to each credit reporting agency.

83. Specially, Wells Fargo failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the dispute forms when they responded to the credit reporting agencies, which would have indicated that the account was disputed.

84. Upon information and belief, Plaintiff alleges that Wells Fargo rarely, if ever, added the XB or XC code or other notation that an account was disputed when they responded to consumer disputes.

85. Furthermore, Wells Fargo knew that Plaintiff disputed the subject account through her direct disputes to it.

86. Plaintiff's disputes were bona fide as the mortgage account was not past due.

87. As a result of Wells Fargo's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, credit denial, damage to reputation, embarrassment, humiliation, and other emotional distress.

88. Wells Fargo's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Wells Fargo was negligent, entitling Plaintiff to recovery against it under 15 U.S.C. § 1681o.

89. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Wells Fargo in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

90. WHEREFORE, Plaintiff prays for relief as follows:

   a. Determining that this action may proceed as a class action under Rule 23;

   b. Designating Plaintiff as the class representative for the classes;

   c. Designating Plaintiff's counsel as counsel for the classes;

   d. Issuing proper notice to the classes at Well Fargo's expense;

   e. Determining that Wells Fargo negligently and/or willfully violated the FCRA;

   f. Determining that Wells Fargo violated its contract;

   g. Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

   h. Awarding damages for breach of contract;

   i. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

   j. Granting further relief as this Court may deem appropriate and just.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**ERICA M. THOMPSON**

By: /s/ Kristi C. Kelly
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*